This matter comes before the court on an application for prejudgment remedy. The plaintiff Normarc Seed Company Inc. is seeking the remedy against the defendants Derby Feed Company Limited Partnership, Jeffrey Auerbach, Derby Feed Enterprises Corp. and Derby Feed Real Estate Inc.
This is an action by Normarc Seed Company Inc. (Normarc) on a trade debt resulting from the sale of grass seed to the Derby Feed Company (DFC). The debt is claimed to be in the amount of $259,068.02. Basically, the allegation is that the new corporation, Derby Feed Enterprises Corporation (Enterprises) and Derby Feed Real Estate Inc. (Real Estate) are liable for the debt of the partnership because they are continuations or reincarnations of the old businesses.
In December of 1986 the Derby Feed Company Limited Partnership (the Partnership) acquired the assets in the Derby Feed Co., Inc. (DFC) for the purpose of engaging in the sale, distribution and marketing of bird feed, lawn seed, lawn chemicals, and fertilizers as well as swimming pool chemicals. The Partnership was comprised of the Derby Feed Co., Inc. the general partner and several limited partnerships.
The acquisition was financed by the Connecticut National Bank, a mortgage note and a term loan evidenced by a note. These notes were secured by first priority security interests in all of the Partnership's real and personal property, including inventory, equipment, accounts receivable and intangible assets.
The Partnership, during the fall of 1990, encountered economic problems and entered into negotiations with CNB to restructure the above loans. The negotiations were approaching a successful completion which would have paid the plaintiff's debt in full when one of the major unsecured creditors would not agree to the restructuring. CNB then insisted upon an alternate and immediate means to resolve the Partnership's debt to the bank. In May of 1991 the Partnership and CNB entered into negotiations regarding an uncontested foreclosure by CNB of all the Partnership's assets and a subsequent sale of such assets by CNB to a new entity having fresh capital from new investors.
As a result of these negotiations the Partnership and DFC on CT Page 5430 June 5, 1991 delivered all of its personal property to CNB to enable CNB to dispose of such personal property pursuant to its rights as a security creditor. The personal property was immediately thereafter conveyed by way of a private sale in accordance with C.G.S. 42a-9-504(3) to Derby Feed Enterprises Corporation (Enterprises). The consideration thereafter was $500,000.00.
It should be noted that CNB expressly did not release the Partnership and DFC of its obligations under the note nor did it accept the property in full satisfaction of the obligations due thereunder.
As for the real property, the Partnership at the time of the delivery of the personal property sold the real estate to Derby Feed Real Estate, Inc. (Real Estate) for the sum of $700,000.00. This amount was equal to the appraised value of the property as of December 6, 1990. The amount due under the mortgage note at the time of the transfer was approximately $1,288,000.00. Real Estate was directed to pay over to CNB the purchase price of $700,000.00 to be applied toward satisfying the mortgage note. Again CNB, while accepting the above sum toward satisfaction of the note, did not release the Partnership or DFC from its obligations under the note nor did it accept the money in full satisfaction.
The Partnership and DFC remain liable for whatever remains due on the mortgage note as well as the promissory note securing the personalty.
The outstanding capital stock of both Enterprise and Real Estate is owned equally between one Steven Glottstein and The Joan Auerbach Trust, a trust funded by Joan Auerbach's father. Capital contributions to both were in the amount each of $250,000.00. They were made prior to the purchases previously mentioned in order to partially fund the cost of acquiring the assets of the two corporations. The balance was funded by way of financing made available by CNB to each corporation. Thus the management and operating structure has changed completely. Upon the failure of there structuring efforts the management partner of the original entity exited the scene and the investors lost their investment. There was a new capitalization with new cash and new management. There is no real continuity of ownership between the new and the old entities nor is there any continuing operating control.
The court finds no evidence on the part of anyone which might indicate any wrongdoing on the part of the original owners and the new owner, CNB. The sale of the assets took place pursuant to the bank's rights as a perfected secured party and pursuant to statute. See C.G.S. 42a-9-504. CT Page 5431
In a prejudgment remedy hearing it is necessary for the plaintiff to show that there is probable cause to sustain their position. The evidence before the court is not sufficient for the court to make any finding of successor liability. The original managing partner is no longer in the picture and in addition has suffered a loss of his entire interest in the original entity. Also he has no interest in either of the two new corporations. The passive partners in the original partnership have also lost their interests. The bank (CNB) has itself suffered a substantial loss while there has been an infusion of substantial cash by the new companies.
The motion for prejudgment remedy is hereby denied.